UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARKADY SARDARIAN,<br><br>          Plaintiff,<br>  v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY; DEAN J. SAVRAMIS, in his official capacity; and<br><br>DEPARTMENT OF EMERGENCY SERVICES & PUBLIC PROTECTION, DIVISION OF CONNECTICUT EMERGENCY MANAGEMENT & HOMELAND SECURITY; WILLIAM J. HACKETT, GEMMA FABRIS, AND KEN DUMAIS, in their official capacity; and TOWN OF WESTPORT, CONNECTICUT; JIM MARPE, ROBERT E. YOST, ANDREW KINGSBURY, AND MICHELE ONOFRIO, in their official capacity;<br><br>          Defendants. | Civil Action No.<br>No. 3:19-cv-910 (CSH)<br><br><br><br><br><br><br><br>OCTOBER 23, 2019 |

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION [Doc. 37]**

**Haight, Senior District Judge:**

### I. INTRODUCTION

*Pro se* plaintiff Arkady Sardarian commenced this action pursuant to the Stafford Act, 42 U.S.C. §§ 5133, *et seq.*, the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, and the Civil Rights Act of 1871, 42 U.S. Code § 1983, to void the decision by the Federal Emergency Management Agency ("FEMA") in July 2018 to terminate previously awarded Hazard Mitigation Grant Program

1

("HMGP") funding for the elevation of the lowest living area of his raised-ranch slab-on-grade residence located in Westport, Connecticut. Doc. 1, ¶ 1. Defendants in the action include FEMA, the Department of Emergency Services and Public Protection ("A Division of Connecticut, Emergency Management and Homeland Security"), the Town of Westport, and a list of individual defendants who are governmental officials in the aforementioned and other agencies, in their official capacities.

Pending before the Court is Plaintiff's motion for reconsideration [Doc. 37] of the Court's prior Ruling [Doc. 34], denying without prejudice his motion to redact personal information [Doc. 19], which he submitted in support of his motion for appointment of counsel [Doc. 7].

## II. **DISCUSSION**

### A. Standard for Reconsideration

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Accordingly, "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper,

*Federal Practice & Procedure* § 4478 at 790).[1]

It is well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "Denials of motions for reconsideration are reviewed only for abuse of discretion." *Id.* (quoting *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir.2008) (per curiam)).

**B.     Plaintiff's Motion for Reconsideration**

In the case at bar, Plaintiff moves the Court to reconsider its denial, without prejudice, of his motion to redact personal information he presented to the Court in support of his motion for appointment of counsel. He presents what he terms "clarifications and explanations" that he hopes will convince the Court that his privacy interests in the information "outweigh the public's interest in obtaining [that] information." Doc. 37, at 1.

Essentially, Plaintiff seeks to reargue his motion for redaction. He requests once again that the Court redact information bearing on the issue of whether he lacked sufficient funds to obtain his own counsel and the circumstances he believed supported his motion for appointed counsel. The

---

[1] The Local Rules of this District comport with the Second Circuit's standard for reconsideration, specifying as follows:

> Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.

D. Conn. L. Civ. R. 7(c)(1).

Court declined to appoint counsel for Plaintiff on June 19, 2019, because the financial information he presented established plainly that he was not indigent or "unable to afford counsel" under the applicable statute, 28 U.S.C. § 1915(e)(1). Doc. 12, at 9-10. He then moved to redact much of the personal information he had presented. This information related to his financial status, including: general sums for his salary as a project engineer, earned income, taxes, interest, dividends, rents, investments, savings, property, and loans. Doc. 19-1, ¶¶ 3-7. He also sought to redact his statements regarding certain family members who rely on him for support, the fact that no member in his household over age 18 is presently employed, his projections for his financial status in future years, and the reasons he attempted to secure counsel on a contingency basis. *Id.* ¶¶ 8-10. Finally, Plaintiff requested to redact the circumstances which he believed supported his application for appointment of counsel, including, *inter alia*, his need for a suitable attorney who is familiar with court rules and procedure and his belief that his work overseas will prevent him from attending to court-related matters on a timely basis. *Id.* ¶ 15. Plaintiff characterized all of this information he designated for redaction as "personal" but failed to provide the Court with a basis to redact or seal.

In its Ruling denying redaction, the Court explained the standard to seal, noting that there is "a strong, long-established presumption of public access to judicial documents, those documents that are 'relevant to the performance of the judicial function and useful in the judicial process.'" Doc. 34, at 3 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) and collecting cases).[2] The presumption of public access is at its strongest when the documents at issue have "been

---

[2] *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995) ("*Amodeo I*") ("The Second Circuit defined a judicial document as an item which is "relevant to the performance of the judicial function and useful in the judicial process.").

submitted as a basis for judicial decision making." *Id.* (quoting *Greater Miami Baseball Club Ltd. P'ship v. Selig*, 955 F. Supp. 37, 39 (S.D.N.Y. 1997)). A federal court may only seal a document if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 4 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986) ("*Press Enterprise II*")).

It was Plaintiff's burden, as the party requesting sealing, to demonstrate the grounds to seal each requested portion of his documents. *Id.* (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)). To do so, he was required to establish the particular prejudice or harm resulting if the designated portions of his documents were not sealed. Only then could the Court make the requisite "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." D. Conn. L. Civ. R. 5(e)3.

Plaintiff, however, failed to present specific grounds to seal the information at issue. The Court thus denied his motion to seal, explaining that the information had been central to the Court's ruling denying appointment of counsel. The financial data presented had shown that Plaintiff did not lack sufficient funds to obtain his own counsel. Plaintiff had simply requested his information to be sealed as "personal," perhaps due to his discomfort in knowing that his finances had been exposed to public view. The Court explained that "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [the particular material] is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order." *Id.* at 6 (quoting *Flaherty v. Seroussi,* 209 F.R.D. 295, 299 (N.D.N.Y. 2001)). In denying Plaintiff's motion to seal without prejudice, the Court clarified that Plaintiff may re-file his motion for redaction "with the particularized grounds to seal any requested paragraph in a supporting memorandum of law."

5

*Id.* at 8.

Rather than filing such an amended motion to redact, setting forth the requisite particularized grounds for sealing designated information, Plaintiff has filed the present motion for reconsideration, asserting that the Court is mistaken in its "current understanding" of the Plaintiff's reason for submitting his financial information in the first place. Doc. 37, at 2. He states that he is "well aware that he is not indigent" and is "willing to pay reasonable attorney[s'] fees from the proceeds of the lawsuit along with reasonable retaining fee[s]." *Id.* However, he moved for appointed counsel based on language he read in the Court-issued "Guide for Self-Represented Litigants"(revised Mar. 8, 2018) (herein "Guide"). *Id.* at 2-3.

In particular, Plaintiff notes that the Guide states that "Counsel is appointed in a few select cases where the court determines that representation by an attorney is particularly appropriate or necessary"; and to qualify, a self-represented litigant must "demonstrate that he has made attempts to obtain representation or legal assistance on his own, but was unsuccessful." *Id.* at 2 (quoting Guide, at 16-17). Plaintiff thus explains that he applied for appointment of counsel because his "efforts to obtain qualified representation did not yield any result." *Id.* He argues that there "is no mention of the requirement of any party to be indigent" to obtain counsel in the "*Court-appointed Counsel* section of the Guide." *Id.* at 3 (emphasis in original) (citing Guide, at 16-17). He concludes "[i]n summary [that] self-represented litigants are not informed that in order to qualify for a Court appointed counsel, the applicants must be indigent" or else he would have "refrained from undertaking the effort to request a Court appointed counsel." *Id.* at 3.

Plaintiff then spends five pages of his memorandum discussing and summarizing Connecticut case law and various Connecticut "Practice Book" sections regarding sealing in state

6

court. Unfortunately, Plaintiff, as a *pro se* litigant, fails to comprehend that by filing his action in federal court – as opposed to state court – only Federal Rules and case precedent of the Second Circuit and United States Supreme Court are binding on this Court's decisions.

Finally, Plaintiff states that he believed that when he filed his motion for appointment of counsel on the case docket, it would be "treated in strict confidentiality by the Court" because he received "no warning . . . that the divulged personal or financial information . . .[would] become a matter of public record and remain in [the] public domain." *Id.* at 7. He notes that in the "Privacy Policy" section of the *pro se* Guide, litigants are asked only to "partially redact personal data identifiers from their pleadings" but there is no language "alerting the self-represented litigants from filing any other written sensitive personal and financial information." *Id.* Therefore, the language in the Guide "did not stop the Plaintiff from disclosing confidential private information." *Id.* at 8.

In addition to taking issue with the Guide, Plaintiff faults the Clerk's Office in failing to inform him of the Court's "pilot program allowing attorneys to e-file sealed motions and sealed documents in civil cases" and in failing to warn him that "any confidential information in the motion will become a matter of public record." *Id.* Plaintiff thus asks the Court to redact his "personal" information on the grounds that he was "unintentionally led to publicly file his confidential personal and financial information due to lack of simple, easy-to-understood [sic] and clear instructions in publications provided by the Clerk's Office or found in the Court's web page." *Id.* at 8-9.

Finally, Plaintiff argues that his "divulged confidential information" should be redacted because it may "adversely impact the Plaintiff's or his family members' ability to secure employment, to negotiate a just salary and/or a benefits package, to obtain affordable health care or other types of insurance policies, *e.g.* disability insurance, or [cause the family] to become the target of money

extorsion [sic] or other harmful schemes." *Id.* at 9-10. Plaintiff believes that "[t]he magnitude of the threat to the Plaintiff and his family is even greater when [one] consider[s] the current horrific trends in the misuse of the public's personal data, and its manipulation and application by a large number of legal and illegal information technology and criminal entities – both domestic and foreign." *Id.* at 10.

**C. Analysis**

In his motion for reconsideration, Plaintiff fails to address the strict standard the Court must apply to such motions. He appears unaware that reconsideration is generally only granted if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

*1. Sealing*

First, as to sealing, the only allegedly controlling decisions Plaintiff argues the Court overlooked include Connecticut cases and Connecticut Practice Book provisions, neither of which is applied or binding in federal court.

Plaintiff also provides no facts he previously presented which bear on sealing but that the Court overlooked. Rather, he presents information *he* overlooked: namely, that by filing a pleading on the case docket, it becomes available to the public. The Court granted Plaintiff permission to e-file in this case [Doc. 11] so that he had only to view his case on the internet on CM/ECF to realize that all documents attached as links are available to the public.

Because he is a *pro se* litigant, he faults the Clerk's Office in failing to warn him that his filings may be viewed by the public. In particular, he finds the "Guide for Self-Represented

8

Litigants" deficient in its failure to provide "simple, easy-to-underst[and] and clear instructions." Doc. 37, at 8-9.

However, Plaintiff is mistaken in his belief that either the Clerk's Office or the free Guide bears responsibility for his level of understanding regarding his court filings. As the Guide itself makes clear:

> This Guide will not answer all of your questions about what you need to do to represent yourself effectively as a self-represented litigant. It is intended *only as an informative and practical resource*. It is *not a substitute for legal advice from an experienced attorney*. The information should be read and used in conjunction with the Federal Rules of Civil Procedure, the District of Connecticut Local Civil Rules and the specific practices of the judge assigned to your case.

"Guide for Self- Represented Litigants" (revised 3-8-2018), at 3 (emphasis added).[3]

If Plaintiff had consulted the pertinent Local Rules on sealing, as suggested by the Guide, he would have discovered that a judicial document may only be sealed upon court order, and there are steps one must take in requesting the court to seal a judicial document. *See* D. Conn. L. Civ. R. 5(e) ("Sealed Proceedings and Documents"). Rule 5(e)(3) states, in relevant part:

> No judicial document shall be filed under seal, except upon entry of an order of the Court either acting *sua sponte* or specifically granting a request to seal that document. Any such order sealing a judicial document shall include particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.

---

[3] The Court's website also cautions all litigants that the "Clerk's Office CANNOT" –

- Tell you whether you should file a case
- Give you legal advice or an opinion about what will happen if you file your case in this court
- Tell you what to write in court documents or what to say in court hearings

*See* http://www.ctd.uscourts.gov/tips-and-helpful-information.

In researching state law on sealing, rather than federal law which applies to federal cases, Plaintiff missed the mark. The Court is sympathetic to Plaintiff's difficulties in navigating the law. However, if, as he concedes, he can afford counsel and is having difficulty performing his own legal research, he may wish to retain counsel to assist him. At present, he has presented no "controlling decisions or data that the court overlooked" that would alter the Court's decision and thus warrant reconsideration. *See Van Buskirk*, 935 F.3d at 54.

### *2. Indigence as A Threshold Requirement for Appointment of Counsel*

Second, as to his former erroneous belief that a party need not be indigent to seek appointment of counsel, Plaintiff overlooked the applicable federal statute for such appointment in a civil case. Under 28 U.S.C. § 1915(e)(1), captioned "Proceedings in forma pauperis," "[t]he court may request an attorney to represent any person *unable to afford counsel*." 28 U.S.C.A. § 1915 (e)(1) (emphasis added).[4] In addition, Plaintiff failed to heed the Court Guide's instruction that, in pursuing one's action, one should consult the District's Local Rules. Guide, at 3. Local Rule of Civil Procedure 83.10(c) lists the three criteria for appointment of counsel:

> Pro bono counsel may be appointed at the discretion of the presiding judge upon motion or on the initiative of the presiding judge when the judge determines that the appointment will serve the interests of justice based upon factors such as (a) *a party's apparent ability or inability to afford legal counsel*, (b) the likelihood that counsel may be secured under alternative fee arrangements, and (c) the apparent merit of the party's claims or defenses.

D. Conn. L. Civ. R. 83.10(c)1. (emphasis added). Had Plaintiff consulted the Local Rules, as

---

[4] Black's Law Dictionary defines the term "in forma pauperis" as Latin for the phrase "in the manner of a pauper." Black's Law Dictionary (11th ed. 2019). Black's clarifies that this phrase refers to "the manner of an indigent who is permitted to disregard filing fees and court costs." *Id.* (citing, *inter alia*, 28 U.S.C. § 1915)).

10

directed by the Guide, he would have noted that the first factor the Court must consider in appointing pro bono counsel is whether a party is able to afford legal counsel.

Furthermore, had Plaintiff simply asked the Clerk's Office whether all motions for appointment of counsel are automatically sealed, he would have been informed that the answer was no. Per the Court's website, the Clerk's Office will "[a]nswer questions about how the Court works" and "[g]ive . . . general information about court rules, practices and procedure." *See* http://www.ctd.uscourts.gov/tips-and-helpful-information. One must, however, ask one's questions because the Clerk cannot guess what concerns or needs a litigant has.[5]

Finally, as to Plaintiff's newly stated substantive reasons for sealing, presented for the first time on reconsideration, these reasons are vague and overly broad. Plaintiff asserts that allowing this "confidential information [to remain] in a public domain could negatively impact the interests, security and well[-]being of the Plaintiff and the members of his family." Doc. 37, at 9. He then states that the information could "adversely impact [his] or his family members' ability to secure employment, to negotiate a just salary and/or a benefits package, to obtain affordable health care of other types of insurance . . . or [cause them] to become the target of money extor[t]ion or other harmful schemes." *Id.* at 10. Plaintiff, however, fails to indicate how his salary and assets would deter an employer from hiring him and/or prevent any member of his family from receiving a just salary or benefits package. Also, given that there is no medical information in his affidavit, it is not clear why he or any family member would be impeded in securing health or disability insurance.

---

[5] There is no indication on the Court's form entitled "Motion for Appointment of Counsel" that the motion will automatically be sealed; and the information requested on the form clearly includes financial data. If Plaintiff had questions about sealing, he should have consulted an attorney or asked a member of the Clerk's Office whether the motion would be sealed when filed.

Rather, from the information presented, it is clear that Plaintiff would be able to pay the premiums for an insurance account. Lastly, as to hypothetical schemes of extortion, Plaintiff presents no basis for the Court to conclude that his information will make him any more likely of a target for such schemes than, for example, millions of Americans whose home addresses or possessions appear in the public domain (*e.g.*, phone books, social media, town records). There is no reason to believe that redacting the main information from Plaintiff's affidavit, which was central to the Court's ruling on his request for appointed counsel, would shield him from the clutches of criminal entities on the internet. The information he seeks to redact includes no account numbers or personally identifying data (*e.g.*, Social Security Number, birth dates) with which a hacker may attempt to confiscate his salary or assets. It simply includes general estimates of his salary, assets (lump sum of interest, dividends, rents, investments), amounts he then had in his bank accounts (with no account numbers or bank names indicated), and various expenses and loans he has incurred. As to the value of real estate he owns, property values are generally available to the public online. Moreover, as to the fact that his wife is not currently employed and his adult children are in college, these facts do not appear sufficiently sensitive on their face to make them subject to sealing. Finally, with respect to Plaintiff's unsuccessful efforts to obtain experienced counsel on a contingency basis, information regarding one's attempts to obtain counsel is a criterion to receive appointed counsel. There is no particularized reason why such information would harm a litigant if left unsealed. In sum, the Court finds that even considering Plaintiff's newly presented arguments for sealing, his reasons are vague and broad. In short, they are inadequate for this Court to seal a judicial document, one which was the basis for this Court's denial of Plaintiff's motion to appoint counsel.

Plaintiff is reminded that when information is material to the Court's ruling on a motion, the

presumption of public access must be given great weight. *See, e.g., Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2016 WL 11430775, at *5 (E.D.N.Y. May 24, 2016) (finding financial information submitted in support of motion for summary judgment was contained in "judicial documents" that "were 'material' to the District Court's denial of that motion; as such, the presumption that they should be made publicly available 'is given great weight....'") (quoting *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 158-59 (S.D.N.Y. 2003) and collecting cases)*; Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (holding document containing alleged confidential assessment of case's merits was "no longer a private document" because it became "part of a court record" when submitted in support of a motion).

Apart from his conclusory assertion that the information at issue could "negatively impact" Plaintiff and/or his family, Plaintiff has made no showing of definitive countervailing factors to overcome the strong presumption of access. *See Lugosch*, 435 F.3d at 124. Presenting a "naked conclusory statement . . . falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal." *Joy,* 692 F.2d at 894. With respect to individuals' salary figures in a judicial document, "[t]o overcome the First Amendment presumption of public access, [a party] must show that disclosure 'would result in an injury sufficiently serious to warrant protection.'" *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-01570 (GBD) (SN), 2019 WL 3296959, at *7 (S.D.N.Y. July 22, 2019) (quoting *Tropical Sails Corp. v. Yext, Inc.*, No. 14-CV-7582, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016) (citations omitted)). That has not occurred in this case.

In short, even treating Plaintiff leniently as a *pro se* litigant, reviewing new assertions made on reconsideration, Plaintiff has failed to present specific, significant harm that will occur if his

information remains on the case docket. Plaintiff now seems to wish that he had never filed his unsuccessful motion for appointment of counsel. Doc. 37, at 3, 10. Unfortunately, however, once ruled upon, a motion may generally not be withdrawn. Both the motion and the ruling are part of the judicial record. *See, e.g., Alston v. Pafumi*, No. 3:09CV1978 (CSH), 2011 WL 1885676, at *1 (D. Conn. May 18, 2011) (denying as moot Plaintiff's motion to withdraw prior motion to stay ruling because "the court ha[d] already ruled on the motion to stay"). *See also United States v. Flores*, No. CR. C-04-153, 2008 WL 3538677, at *1 (S.D. Tex. Aug. 8, 2008) (denying defendant's motion to withdraw motion previously filed with the Court because it had "already been ruled upon").

As District Judge Glasser of the Eastern District of New York, in this Circuit, summarized in a factually similar case:

> [Defendant] Mirza's affidavit and supporting documents are 'judicial documents' because they are central to the Court's determination of his eligibility for the appointment of counsel. . . . Presumably, defendant Mirza's request to seal his affidavit is motivated by his desire to keep his financial affairs private. His financial affairs, however, the revelation of which has undermined his qualification for the appointment of counsel, was the issue before the court. His request that his affidavit and supporting documents not be entered on the docket sheet is therefore denied.

*Mitchell by & Through Hughes v. Mirza*, No. 07-CV-03686 (ILG), 2009 WL 10706571, at *2 (E.D.N.Y. May 6, 2009).

### III. CONCLUSION

In his "Motion for Reconsideration" [Doc. 37], Plaintiff has failed to specify any "controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader*, 70 F.3d at 257). Instead, with respect to new legal authorities, Plaintiff presents state law which is inapplicable in this federal action.

In addition, Plaintiff has established no facts that the Court previously overlooked which might reasonably alter its decision. Rather, Plaintiff has attempted to take "a second bite at the apple" by trying to convince the Court that his affidavit must be sealed. He now blames both the Clerk's Office and the *pro se* litigants' Guide on the Court's website for his failure to learn that his court filings would not automatically be sealed. Plaintiff's failure to research and discover the level of confidentiality of court filings before he filed them is not a basis for sealing. Plaintiff filed his motion for appointment of counsel, and the Court ruled based on the information he provided therein. Plaintiff knew the motion's contents when he filed it. Therefore, absent a compelling reason to seal, the public is entitled to have access to that information to understand why the Court denied the motion. *See* D. Conn. L. Civ. R. 5(e)(3) (specifying that the court may only seal a judicial document if it can make "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons").

The Court once again clarifies that there must be sufficient grounds to protect the information the movant wishes to seal. Discomfort or embarrassment because financial information has been revealed is an insufficient ground. Also, Plaintiff's newly presented fears that computer hackers may access the Court's CM/ECF and/or wish to prevent a potential future employer or insurance company from discovering his general financial status are not, standing alone, compelling reasons to seal information that was material to the Court's ruling to deny appointment of counsel.

For all of these reasons, applying the mandatory strict standard for reconsideration, the Court hereby DENIES Plaintiff's "Motion for Reconsideration" [Doc. 37]. The Court sympathizes with Plaintiff regarding his difficulties in litigating *pro se* and once again reminds him that he may wish to hire his own counsel to pursue this action. In so doing, he may alleviate potential confusion

regarding requirements for court filings and the relevance of legal authorities.

It is SO ORDERED.

Dated: New Haven, Connecticut
October 23, 2019

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge